# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CARRYNE EARNEST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14-cv-00615-NKL |
| ) | |
| CAROLYN W. COLVIN ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Carryne Earnest seeks review of the Administrative Law Judge's decision denying her application for Social Security benefits. For the following reasons, the decision is affirmed.

## I.   Background

### A. Earnest's Medical History

Earnest seeks Social Security Income and Disability Insurance Benefits for disabilities beginning on August 12, 2011 and September 1, 2011, respectively. Since 2011, she has consistently sought treatment for health problems including chronic obstructive pulmonary disease ("COPD"), sleep apnea, Eustachian tube dysfunction, cardiomegaly, thoracic and cervical back pain, anxiety, gastritis, lumbar spine impairment, and restless leg syndrome.

In July 2011, Earnest went to the ER complaining of chest heaviness, shortness of breath, chest pressure, and upper back pain bilaterally. [Tr. 193]. The overall impression

was COPD. [Tr. 198]. Four days later, Earnest returned to the hospital complaining of similar symptoms. Doctors instructed her not to smoke or do any strenuous activity and told her to follow up with her primary care physician. [Tr. 187]. In August, she was admitted to the hospital again. An EKG and chest x-rays were normal. [Tr. 217, 227]. That same month, she went to her doctor and was prescribed medications for bronchitis, abdominal pain, anxiety, and fatigue. [Tr. 282]. Throughout August she made many more trips to the hospital due to complications with her medications, hemorrhoids, continued weakness, and shortness of breath. EKGs and x-rays generally displayed no acute findings. [Tr. 229-30, 244].

Throughout the remainder of 2011, Earnest continued to consult with her primary care physicians and visit the ER. She consistently complained of dyspepsia, diarrhea, chest pain, neck pain, intermittent numbness, stiffness, and sinusitis. She underwent a colonoscopy, EKGs, pulmonary testing, and x-rays. The results of these tests showed multilevel degenerative disk disease and periodically displayed mild temporary abnormalities but were otherwise normal. [Tr. 257, 249, 265, 269]. Her doctors noted that she had reproducible pain and tenderness in her back. [Tr. 531]. She was assessed with sinusitis numerous times. Her doctors prescribed some pain medications, Z-Packs, vitamins, and continually advised Earnest to stop smoking. [Tr. 277].

In 2012, Earnest began complaining of nighttime pain in her legs. [Tr. 598-99]. She continued to complain of head and chest congestion. An MRI in February displayed unremarkable results. [Tr. 591]. In April she visited a doctor for her Eustachian tube dysfunction. An audiogram revealed moderate high frequency sensorineural hearing loss

2

on the left and mild high frequency sensorineural hearing loss on the right. [Tr. 475]. He prescribed her ten days of cefdinir to treat mild ear effusion and advised her to continue using Flonase. *Id.* Earnest continued to exhibit symptoms of COPD.

Earnest first consulted with Dr. Dale Kesl in the Main Management Clinic at Lafayette Regional Medical Center on May 10, 2012. [Tr. 462]. He diagnosed degenerative joint disease, muscle spasms, and chronic neck and back pain. [Tr. 463]. He prescribed Parafon and Vicoprofen and scheduled her for osteopathic manipulative treatment and trigger points. In June Dr. Kesl began treating Earnest with a trigger point injection of Depomedrol and bupivacaine and spinal manipulation. [Tr. 421, 426]. A month later she received a nerve block and spinal manipulation. [Tr. 410-11, 416]. Dr. Kesl continued to note that Earnest suffered from muscle spasms, trigger points, and tenderness throughout the remainder of the year. She received consistent treatment. Earnest also continued to have problems with bronchitis and sinusitis throughout the remainder of the year.

In September 2012, Earnest underwent a sleep study and was diagnosed with obstructive sleep apnea. She was advised to use a CPAP machine. [Tr. 344, 566].

In January 2013, Earnest reported to her doctor with a persistent and worsening cough and difficulty sleeping. She was advised to continue on her regular course of treatment with COPD and sleep medications. In February she went to see Dr. Kesl and reported having difficulty with activities at home, sleep, physical movement, sexual relations, and stated that she had difficulty coping with pain. He discontinued all current medications and prescribed three new drugs. [Tr. 310]

**II.     ALJ Decision**

The Administrative Law Judge ("ALJ") denied Earnest's request for disability benefits, concluding that she had the Residual Functional Capacity ("RFC") to engage in substantial gainful activity. The ALJ concluded that despite Earnest's severe impairments of COPD, obstructive sleep apnea, Eustachian tube dysfunction, and borderline cardiomegaly, she retained the following RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) involving lifting and/or carrying up to 10 pounds; standing and/or walking two hours in an eight-hour workday; sitting six hours in an eight-hour workday; unlimited ability to push or pull with the extremities; no use of ladders, scaffolding or rope; no crawling; occasional climbing of stairs, balancing, stooping, kneeling and crouching; frequent, but not continuous, handling bilaterally; no concentrated exposure to heat; semi-skilled work with an SVP 4 or less; and, a sit/stand option, but one that would not otherwise materially, adversely affect the ability to perform job duties.

[Tr. 18]. A vocational expert testified that with this RFC, an individual would be able to perform the requirements of occupations such as stuffer, document preparer, and order clerk. [Tr. 23].

In determining the RFC, the ALJ considered the medical evidence of the record, as well as Earnest's testimony at the administrative hearing regarding the extent of her symptoms. At the administrative hearing, Earnest complained that she suffered from ringing in her ears and difficulty hearing. [Tr. 633]. She stated that she had pain through her mid and lower back and legs and had difficulty sleeping. [Tr. 634, 638]. She noted that she picked up approximately 10 pounds in the course of her work as a care taker. [Tr. 640]. She told the ALJ that she could not crawl or use a ladder, but that she could

4

navigate a couple of steps with a hand rail. [Tr. 641]. She stated that she could only sit or stand for approximately fifteen to twenty minutes at a time and could walk approximately three to four blocks at a time. [Tr. 645-46].

## III. Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## IV. Discussion

Earnest argues that the ALJ erred in (1) failing to provide Dr. Dale Kesl's opinion controlling weight, and (2) failing to define the frequency with which Earnest needs to alternate between sitting and standing in the RFC. The Court concludes that Earnest's medical records and testimony contain substantial evidence to support the ALJ's decision to discount Dr. Kesl's opinion, and that the RFC determination sufficiently conveyed Earnest's limitations with respect to the sit/stand option.

### A. Treating Source Opinion

Earnest contends that the ALJ erred in failing to provide controlling weight to Dr. Kesl's opinion. Alternatively, Earnest argues that if it was proper to disregard Dr. Kesl's opinion, the record lacks sufficient evidence for the ALJ to make an RFC determination.

In evaluating medical source opinions, an ALJ should consider whether the medical source examined the claimant, whether the medical source was a treating source, the length, nature, and extent of the treatment relationship, how well the medical source supported his opinion with relevant evidence, how consistent the medical source's opinion is with the record as a whole, whether the medical source was a specialist, and any other factors supporting or contradicting the opinion. 20 C.F.R. § 404.1527(c). A treating physician's opinion is not entitled to controlling weight if it is not supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2008).

Dr. Kesl completed a Physician's Residual Functional Capacity Form 9 on February 5, 2013, which noted that Earnest could lift and carry less than ten pounds frequently and up to ten pounds at one time. [Tr. 312]. He stated that she could sit for two hours total in an eight hour work day, stand or walk for one hour total in an eight hour work day, and needed to recline or lie down for two hours in an eight hour work day. *Id.* He noted that she was capable of using her hands repetitively for simple grasping and fine manipulation, but that she would be unable to perform jobs requiring bilateral manual dexterity or repetitive motions with her hands and arms. *Id.* He opined

6

that she could never crouch, crawl, kneel, or climb; could occasionally squat, stoop, and kneel; could frequently bend and reach; and could continuously maintain balance. [Tr. 313]. Dr. Kesl noted that her degree of pain was frequently debilitating and her degree of fatigue was occasionally debilitating. [Tr. 314].

The ALJ concluded that Dr. Kesl's opinion was not entitled to controlling weight because it contradicted Earnest's testimony that she worked a medium exertional job as a caregiver three hours per day, seven days per week, and Earnest did not testify that she needed to lie down throughout the day while she was working. Further, Dr. Kesl's opinion contrasted sharply with the other evidence of the record. [Tr. 21]. Even so, the ALJ adopted some of Dr. Kesl's conclusions, including his opinions that Earnest could not use ladders, scaffolding, or rope, could not crawl, could only occasionally climb stairs, stoop, and kneel, and required a sit/stand option. [Tr. 18].

There is substantial evidence in the record to support the ALJ's decision to reject Dr. Kesl's opinions that Earnest was limited to standing and/or walking for one hour per day, was limited to sitting for two hours per day, and would need to recline or lie down for two hours per day. These opinions are not supported by the remainder of the record or Earnest's own testimony about the scope of her incapacity. Earnest testified at the administrative hearing that she is able to cook and do housework (though "a little bit at a time"), as well as shop for groceries and drive every day. [Tr. 639-40]. She specifically stated that she could do physical tasks including sweeping, mopping, and vacuuming.

7

She stated that she visits friends or relatives approximately twice a week. Most notably, she works approximately twenty hours per week as a caregiver assisting her sister.[1]

The ALJ pointed to a significant amount of other evidence that also conflicted with Dr. Kesl's opinion. He noted that Earnest's medical records showed only mild or borderline cardiac impairments. Dr. Jason Graff concluded in December 2011 that her pulmonary function test was within normal limits. Earnest had a CPAP machine prescribed to address her sleep apnea. The record reflects that Earnest was receiving consistent but moderate treatment for her impairments; the results of her medical tests, including EKGs, x-rays, CTs, and MRIs were consistently unremarkable.

The evidence in the record of Earnest repeatedly seeking treatment and her physicians observing that she did have some amount of degenerative disc disease, decreased range of motion, and ongoing pain is not enough for the Court to conclude that the ALJ's decision is not supported by substantial evidence. Earnest was prescribed medication which succeeded in partially alleviating her pain. Her anxiety medications successfully alleviated most of her anxiety symptoms. There is little evidence in the record to support Earnest's complaints regarding the extent of her pain. Given the inconsistencies between Dr. Kesl's opinion and the remainder of the record, the ALJ was

---

[1] Earnest testified that her sister "help[ed her] if she has to." [Tr. 631]. However, she presents no evidence of how often her sister might assist her or with what tasks. As such, this statement does not significantly alter the import of Earnest's apparent ability to perform physical tasks aiding her sister in addition to caring for her own home and husband. At a minimum, there is substantial evidence to support the manner in which the ALJ weighed the evidence.

8

justified in declining to afford the opinion controlling weight and determining that it should be given only little weight.

Earnest next argues that even if the ALJ was justified in discounting Dr. Kesl's opinion, the RFC determination is not justified by the remainder of the record. Specifically, she contends that without Dr. Kesl's opinion there was insufficient evidence remaining in the record for the ALJ to make an RFC finding.

SSR 96-8p states that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." However, there is no requirement that a doctor submit a medical opinion regarding every element of the RFC determination. "While a claimant's RFC is a medical question . . . in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. It is simply not true that the RFC can be proved *only* with medical evidence." *Peterson v. Colvin*, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013) (*citing Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) and *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)) (quotations omitted). Along with the medical evidence of the record, evidence of a claimant's daily activities may be used by the ALJ to determine the RFC. *Peterson*, 2013 WL 6237868 at *4.

While the record contains no medical opinions other than Dr. Kesl's, the record contains sufficient evidence to support the ALJ's RFC determination such that it was not necessary to seek additional information. Earnest's activities as a caregiver are probative to her ability to function while receiving treatment and support the ALJ's conclusion that even accounting for Earnest's persistent pain, she would be capable of performing

sedentary work. Her ability to work for three hours per day, drive, grocery shop, and care for her own home and husband supports the ALJ's opinion that she is capable of sitting for six hours in an eight hour work day and walking for two hours per day. The sit-stand option accommodated for Earnest's statements that she found it necessary to alternate between sitting and standing throughout the day to relieve pressure on her back and legs. The ALJ appropriately limited her RFC with regard to stairs, balancing, stooping, kneeling, crouching, and physically demanding tasks, relying in part on Dr. Kesl and in part on common sense given the record as a whole.

Earnest also argues that while the record contains objective medical evidence of her physical functional limitations, the ALJ does not cite this evidence to support each conclusion in the RFC. While the ALJ did not specifically list each piece of evidence considered in evaluating each element of the RFC, he generally discussed Earnest's medical history in relation to the RFC. Furthermore, as the record contains substantial evidence to justify the RFC determination, any failure to draw specific links between the evidence and the RFC constitutes harmless error.

### B. Sufficiency of the RFC

Earnest next contends that the ALJ failed to adequately define in the RFC the frequency with which she needs to alternate between sitting and standing.

The RFC is the maximum ability a claimant has despite her functional limitations and restrictions created by her impairments. SSR 96-6p. Once the ALJ determines the claimant's RFC, the ALJ must determine whether the claimant can perform her past

10

relevant work. If the ALJ concludes that she cannot, the ALJ must determine whether there is other work that exists in the national economy that the claimant could perform.

The ALJ concluded that, given her RFC, Earnest could not perform her past relevant work as a care taker, retail assistant manager, loader/unloader, or bartender. However, the vocational expert testified that based on her knowledge of the Dictionary of Occupational Titles ("DOT") and her background and work experience related to the sit/stand option, Earnest would be able to work as a stuffer, document preparer, or order clerk. [Tr. 652-53].

Earnest contends that this testimony is not substantial evidence of Earnest's ability to work because the testimony was based on a defective hypothetical RFC. Specifically, she argues that the ALJ's inquiry about whether Earnest would be able to work if she required "a sit/stand option, but one that would not otherwise materially, adversely affect the ability to perform job duties" was inadequate. [Tr. 17]. According to Earnest, this limitation is insufficient because it does not describe the frequency with which she needs to be presented with a sit/stand option.

SSR 96-9p states that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." 1996 WL 374185, at *7. However, the Eighth Circuit has consistently held that an RFC indicating need for a sit/stand option "at will" is sufficient. *See Carlson v. Chater*, 74 F.3d 869, 871 (8th Cir. 1996); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004). The Court concludes that the RFC limitation here was also sufficiently specific. *See Archer v. Colvin*, 2014 WL 7404067, at *10 (W.D. Mo. Dec. 30, 2014) (affirming an ALJ's

11

decision where the RFC stated that the claimant required "a sit-stand option that would not interfere with his ability to perform his job"); *see also White v. Colvin*, 2014 WL 4681057, at *38 (W.D. Mo. Sept. 22, 2014) (affirming an ALJ's decision which contained the RFC limitation that the claimant "would need the option to sit or stand at will without otherwise materially adversely affecting her ability to do the job").

Defendant argues that the sit/stand option as conveyed in Earnest's RFC indicates that Earnest requires a sit/stand option at will without leaving the work station. Earnest argues that this proposed meaning is not clear from the RFC, and contends that any speculation about the ALJ's intended meaning does not help understand the vocational expert's understanding of the ALJ's limitation and therefore provides no utility for assessing the propriety of the vocational expert's testimony. Regardless of the accuracy of Defendant's proposed interpretation, the fact that nearly identical RFC limitations have been included in RFCs in other cases without confusion suggests that the vocational expert understood the limitation the ALJ posed. *Id.*; *see also Archer*, 2014 WL 7404067. Furthermore, the sit/stand limitation in the ALJ's decision is phrased in the same way the ALJ phrased the limitation when asking the vocational expert whether a person with Earnest's limitations would be able to perform jobs existing in the national economy. Neither the vocational expert nor Earnest's counsel requested clarification as to the scope of the limitation. The lack of confusion during the administrative hearing suggests that all parties understood the parameters of the proposed limitation.

Earnest also does not identify how the ALJ identifying a more specific sit/stand option requirement would affect the vocational expert's testimony in this case. She

12

argues that the job descriptions of stuffer, document preparer, and order clerk do not accommodate for Earnest's potential need for a sit/stand option every fifteen to twenty minutes. The DOT descriptions of these jobs, however, do not suggest that such a need would inhibit a worker's ability to perform their job.

Earnest further argues that SSR 83-12 states that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." Therefore, she contends, even if the ALJ understood the sit/stand requirement to mean "at will," Earnest still could not do the identified jobs. In making this argument, Earnest ignores the following sentence which instructs that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." Here, a vocational expert was called and testified that Earnest would be able to perform the identified jobs with her functional limitations. *See Carlson*, 74 F.3d at 871 (discussing SSR 83-12 where the vocational expert also identified order clerk as a potential job for the claimant).

**V.     Conclusion**

For the reasons set forth above, the ALJ's decision is affirmed.

<u>/s/ Nanette K. Laughrey</u>
NANETTE K. LAUGHREY
United States District Judge

Dated:  <u>April 30, 2015</u>
Jefferson City, Missouri

13